UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 06-306-GWU


DEBRA L. GRUBBS,                                        PLAINTIFF,


VS:                          MEMORANDUM OPINION


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT,


INTRODUCTION

Debra Grubbs brought this action to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income.  The case is before the Court on cross-motions for summary judgment.


APPLICABLE LAW


The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1.      Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2.  See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to step 4.  If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed

1

to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work?  If yes, the claimant is not disabled.   If no, proceed to step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply.  Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive.  <u>Id</u>.  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Id</u>.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Houston v. Secretary of Health and Human Services</u>,

2

736 F.2d 365, 367 (6th Cir.  1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. 404.1521, 416.921.  The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment,"  Landsaw v. Secretary of Health and Human Services,  803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987).  The plaintiff is said to make out a  prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways that the Commissioner may meet his burden is through the use of the

medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to

4

do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual."  20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments."  <u>Varley v. Secretary of Health and Human Services</u>, 820  F.2d 777 (6th Cir.  1987).

<u>DISCUSSION</u>

The Administrative Law Judge (ALJ) concluded that Grubbs, a 41 year-old woman with a "limited" education and no past relevant work history, suffered from impairments related to a generalized anxiety disorder, and estimated borderline intelligence.  (Tr. 16, 20).  Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of work at all exertional levels.  (Tr. 25).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 25).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 24).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert William Ellis included such non-exertional restrictions as a limitation to job settings involving only simple tasks and instructions in non-public settings.  (Tr. 375).  No exertional

restrictions were included.  In response, Ellis identified a significant number of jobs which could still be performed.  (Tr. 375-376).  The ALJ then presented another hypothetical question including such mental restrictions as a "moderate" limitation of ability in such areas as carrying out detailed instructions, maintaining attention and concentration, dealing with the public, responding appropriately to routine work setting changes, and working in coordination with others without distraction.  (Tr. 376).  The witness indicated that the previously cited jobs could still be done.  (Tr. 376).  Therefore, assuming that the vocational factors considered by the expert fairly depicted Grubbs' condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The ALJ properly determined that Grubbs did not suffer from any physical restrictions.  Dr. Hughes Helm reported a completely normal physical examination and imposed no functional limitations on the plaintiff.  (Tr. 119).  Dr. James Ross reviewed the record and indicated that the claimant's physical problems were "less than severe."  (Tr. 269).  More severe physical limitations than those found by the ALJ were not identified by such treating and examining sources as the staff at Appalachian Regional Healthcare (Tr. 137-140, 161-228, 295-347) and the staff at the Cloverfork Clinic (Tr. 141-160, 272-291).  These reports provide substantial evidence to support the administrative decision.

With regard to the framing of the mental factors of the hypothetical question, the undersigned finds no error.  The vocational factors considered by Ellis were essentially consistent with the limitations noted by Dr. Kevin Eggerman, an examining consultant, who opined that Grubbs would be "mildly" limited in her ability to respond appropriately to changes in the work setting, "mildly to moderately" limited in her ability to interact appropriately with the public, supervisors or co-workers, and "moderately" limited in her ability to respond appropriately to

6

work pressures in a usual work situation.  (Tr. 135).  The mental factors considered by Ellis were also compatible with the mental limitations indicated by Psychologists Laura Cutler (Tr. 229-232) and Jay Athy (Tr. 233-236) on their Mental Residual Functional Capacity Assessment Forms.  Psychologists Phil Pack and Stuart Cook also examined the claimant and did not impose greater mental limitations than those found by the ALJ.  (Tr. 125-129).  These reports provide substantial evidence to support the administrative decision.

Nurse-practitioner Karen Chase completed a Mental Medical Assessment of Ability to do Work-Related Activities Form upon which she identified the existence of very severe mental limitations.  (Tr. 293-294).  The ALJ rejected the opinion because he did not believe that it was well-supported by objective medical data since the treatment records contain no medical/clinical findings or testing results. (Tr. 20).  This action would appear appropriate.

Furthermore, as noted by the defendant, under the federal regulations, a nurse-practitioner is considered an "other source" and not an "acceptable medical source" whose opinion would be binding on the administration.  20 C.F.R. Section 416.913.  The Sixth Circuit Court of Appeals has held that the opinion of an "other source" is not binding on the administration.  Walters v. Commissioner of Social Security, 127 F.3d 525, 530 (6th Cir. 1997).  Social Security Ruling 06-03p states that only an "acceptable medical source" can be considered a treating source entitled to superior weight.  Grubbs asserts that Chase was part of an "interdisciplinary team" administering care to her at the Cloverfork Clinic and that this team included medical doctors Colton and Eubanks.  She cites the Ninth Circuit Court of Appeals case of Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) for the proposition that such an interdisciplinary team can be considered an "acceptable medical source."  However, as noted by the defendant, Section 416.913(a)(6), upon

7

which the Gomez decision was premised, was deleted from the administrative regulations in June of 2000.  65 Fed. Reg. 34,950, 34,952.  Therefore, the Court must reject the plaintiff's argument concerning Chase.

Grubbs also asserts that the mental factors presented to Ellis did not fairly characterize her mental condition because they did not include the mental limitations identified by Cutler and Athy, the medical reviewers, on their Psychiatric Review Technique Forms.  (Tr. 237-251, 254-268).  These included "moderate" difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace as well as a "mild" restriction of ability in activities of daily living.  (Tr. 247, 264).  These restrictions appear to be essentially compatible with those considered by Ellis.

Furthermore, even if the ALJ's hypothetical question did not fully present all of the mental limitations noted in the record, Grubbs has only mental impairments. Social Security Ruling 85-15 states that when a claimant's only impairment is mental but does not meet the requirements of one of the Listing of Impairments, then a finding of disabled status is not appropriate unless the impairment imposes a "substantial" loss of ability to function in such areas as understanding, remembering and carrying out simple instructions, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in routine work settings.  Since the plaintiff's mental limitations were not reported to be more than "moderate" in severity by any "acceptable medical source," a finding of disabled status is not appropriate.

Grubbs argues that the ALJ erred in concluding that she did not meet the requirements of Section 12.05(C) of the Listing of Impairments concerning mental impairments.  This Listing requires a claimant to produce:

A valid verbal, performance, or full scale IQ of 60 through 70 and a

8

> physical or other mental impairment imposing additional and significant work-related limitation of function;

20 CFR, PART 404, Subpart P, App. 1, Section 12.05(C). Intelligence testing administered by Pack and Cook produced a verbal IQ score of 66, a Performance IQ score of 60 and a full scale IQ score of 61, scores within Listing range. (Tr. 128). However, the examiners specifically stated that "the following scores are not thought to be a valid estimate of her general cognitive and academic functioning." (Tr. 127). The examiners suspected malingering and indicated that the plaintiff most probably functioned in the borderline range of intelligence. (Tr. 128). Therefore, the claimant does not meet or equal the Listing.

Finally, Grubbs asserts that the ALJ erred by failing to resolve a discrepancy between the testimony of the vocational expert and the Dictionary of Occupational Titles (DOT) as required by Social Security Ruling 00-04. The plaintiff notes that Ellis testified that all the jobs cited by him were light in exertion. (Tr. 376). However, the claimant states that the DOT indicates that most of these jobs were medium or heavy in exertion. The plaintiff was not found to have any exertional limitations. Therefore, presumably all these jobs could still be performed by Grubbs and any error on the part of the ALJ was harmless.[1]

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment

---

[1]In an unpublished opinion, the Sixth Circuit Court of Appeals found that Social Security Ruling 00-04 did not impose an affirmative duty on the ALJ to investigate possible conflicts between the DOT and a vocational expert's testimony and indicated that the claimant should have brought such discrepancies to the ALJ's attention at the time of the hearing. Martin v. Commissioner of Social Security 170 Fed. Appx. 369, 2006 WL 509393 (6th Cir. March 1, 2006).

9

motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 18th day of April, 2007.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**